UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| CHARLES ALLEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 0:12-CV-17-DCR-REW |
| | ) | |
| JOSEPH MEKO, WARDEN, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \*

Petitioner, Charles Allen, is a Kentucky inmate.  DE #1 (Petition).  On November 30, 2007, a Greenup Circuit Court jury convicted Allen of wanton murder.  Allen is currently serving a twenty-year sentence.  DE #6-4 (Judgment).

On February 29, 2012,[1] Allen, proceeding *pro se*,[2] filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  DE #1 (Petition).  Respondent, Warden Joseph Meko, responded in opposition, DE #6 (Response), and Petitioner replied. DE #8 (Reply).  The District assigned the matter to the undersigned for a recommended disposition.  The matter is ripe for consideration.

The Court **RECOMMENDS** that the District Court wholly **DENY** the Petition (DE #1).  Further, the District Court should  **DENY** a certificate of appealability.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Allen affirmed under penalty of perjury that he executed and mailed the petition on February 29, 2012. DE #1 (Petition) at 15.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

1

Petitioner fails to justify displacing the treatment of the matter by the courts of the Commonwealth.

## I.        BACKGROUND INFORMATION

This is a sad case featuring major violence over minor stakes. The record reflects that Allen permitted victim Chad A. Brown, the nephew of his wife (then girlfriend), to store a mobile home on Allen's property while Brown was incarcerated. *Allen v. Commonwealth*, 286 S.W.3d 221, 224 (Ky. 2009), *available at* DE #6-9. Brown eventually sold the mobile home and offered Allen a $50.00 storage fee. *Id.* Brown offered Allen (1) a partial ($40.00) payment by Brown or (2) full payment by Brown's grandfather. Allen rejected both offers and demanded that Allen himself pay the debt in full. *Id.* After removal of the mobile home from Allen's property, Allen complained to a friend about Brown's failure to pay and remarked that someone needed to get a "pine box" ready for Brown. *Id.*

Later that day, Allen went to Brown's residence, armed with a gun. Allen and Brown got into an altercation, and the gun discharged and wounded Brown. Brown's relatives overheard Allen, before leaving the scene, say something akin to, "I meant to kill you, you son of a bitch." *Id.* Brown ultimately died from his injuries. Allen surrendered to authorities and, after officers advised him of his rights, told law enforcement that the shooting was an accident. Deputy Bocook questioned Allen, ultimately asking him why he (Allen) was not injured if the gun had fired while in his waistband. *Id.* Allen then invoked his rights to silence and an attorney.

A Greenup County grand jury indicted Allen on May 30, 2007, for the murder of Brown. DE #6-3 (Indictment). A Greenup Circuit Court jury convicted Allen of wanton

murder[3] and recommended twenty years, the statutory minimum.  The trial court

sentenced Allen in accordance with the jury's recommendation.  Allen, by counsel,

appealed to the Kentucky Supreme Court, raising five issues: (1) the trial court

improperly permitted Detective Bocook to give opinion testimony; (2) Detective Bocook

improperly commented on Allen's right to silence; (3) the trial court denied him the right

to a fair trial when members of Brown's family wore t-shirts at trial bearing Brown's

picture; (4) comments by the trial court denied him the right to a fair trial; and (5) the trial

court permitted improper bolstering of two witnesses related to Brown.  *Allen*, 286

S.W.3d 221.  The Kentucky Supreme Court wholly affirmed Allen's conviction.

Petitioner next filed an RCr 11.42 motion to vacate, set aside, or correct sentence.

Allen alleged, among other general claims, that trial counsel ineffectively assisted him by

(1) failing to call particular witnesses at trial, (2) failing to properly investigate the case,

and (3) failing to retain an expert witness.  The trial court conducted an evidentiary

hearing and ultimately denied the motion.  DE #6-20.  Allen, proceeding *pro se*, appealed

to the Kentucky Court of Appeals, which denied RCr 11.42 relief and affirmed the

findings of the trial court.  *Allen v. Commonwealth*, No. 2011-CA-187, 2012 WL 256168

(Ky. Ct. App. Jan. 27, 2012) (unpublished), *available at* DE #6-27.

---

[3] The Indictment charged Allen with murder, in violation of K.R.S. § 507.020.   In the
instant briefing, both sides allege that the jury convicted Allen of "wanton murder,"
although the Judgment reflects a conviction under the same statute for "murder."  DE #6-
4 (Judgment) at 2.  The Kentucky Supreme Court, in discussing an unrelated
inconsistency in the verdict form, resolved any doubt: "[R]eview of the record revealed
that in answer to oral questioning from the trial court, the foreperson of the jury orally
stated that the jury had unanimously found Allen guilty of wanton murder. . . . So we
assume Allen was found guilty of wanton murder."  *Allen*, 286 S.W.3d at 224 n.1.

Allen filed the instant petition on February 29, 2012. The Court has evaluated all briefing and the full relevant record.[4]

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, established a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005) (quoting *Woodford v. Visciotti*, 123 S. Ct. 357, 360) (2002) (per curiam)). Specifically, AEDPA requires:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  In contrast, when a state court has not addressed in any manner the merits of a properly presented claim, the reviewing federal court assesses the claim *de novo*. *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007).  A petitioner bears the burden of establishing any right to relief. *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)).

As the United States Supreme Court has articulated, "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion

---

[4] The Court secured and reviewed supplemental materials needed for a complete analysis. *See* DE ##9, 11, 13.

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.'" *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., opinion of the Court for Part II)).  In this regard, "clearly established law under the Act encompasses more than just bright-line rules laid down by the Court.  It also clearly includes legal principles enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002).  At the same time, habeas review focuses on the holdings of the Supreme Court, not its *dicta* or holdings of the courts of appeals.  *Williams*, 120 S. Ct. at 1523 (regarding *dicta*); *id.* at 1507 (quoting *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996)) (regarding reliance on jurisprudence from courts of appeals).

Regarding the "unreasonable application" clause, the Supreme Court has held that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S. Ct. at 1523.  The writ may not issue solely because the state court incorrectly applied the relevant Supreme Court precedent; instead, the state court's misapplication must have been objectively unreasonable.  *Id.* at 1521-23.  In determining whether the state court misapplied Supreme Court precedent, a federal court may look only to the state of the case law "as of the time of the relevant state-court decision." *Id.* at 1523.  Ultimately, the habeas court should not grant relief "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

As to any "unreasonable determination of the facts" claim, a federal court must presume all determinations of factual issues by the state court to be correct unless the

petitioner rebuts that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).[5]  Findings of fact entitled to the presumption include "[p]rimary or historical facts found by state courts," *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as factual findings made by state appellate courts based upon the trial record.  *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003) (citing *Sumner v. Mata*, 101 S. Ct. 764, 769 (1981)).  However, the presumption does not fully apply when the § 2254 petition involves mixed questions of law and fact.  *See Strickland v. Washington*, 104 S. Ct. 2052, 2070 (1984); *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007).

There need not be an opinion expressly articulating the state court's reasoning in order to determine whether the state court's decision is the result of an unreasonable legal or factual conclusion.  *Harrington*, 131 S. Ct. at 784.  Indeed, "a state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d) …. Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."

---

[5] There is a lack of clarity concerning the interplay between § 2254(d)(2) and § 2254(e)(1).  Each distinctly assures a measure of deference to state court factual determinations.  Although the Supreme Court declined to guide the interaction in *Wood v. Allen*, 130 S. Ct. 841, 845 (2010), the Sixth Circuit has said,

> With respect to § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court-proceeding[.]"

*Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003)).  The (d)(2) overlay is "demanding but not insatiable."  *Id.* (quotation omitted).  *See also Feldman v. Thaler*, 695 F.3d 372, 377 (5th Cir. 2012) (describing (e)(1) as a "supplement[]" to (d)(2), providing an "'arguably more deferential' standard of review for state court findings of fact") (citation omitted).

*Id.* And, unless the petitioner affirmatively shows that the state court's decision "did *not* involve a determination of the merits of his claim," such as where the opinion expressly states the claim was denied on procedural grounds, § 2254(d) applies on habeas review. *Id.* at 784-85. Where the state court resolves a petitioner's claim of error without articulating its reasons for the denial, then:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id.* at 786; *accord Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (independent review where state court does not articulate reasoning for denial is "not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA"). The record as it existed before the state court generally controls. *Pinholster*, 131 S. Ct. at 1398 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

If errors occurred, the reviewing court must evaluate whether they constitute "trial errors," "whose effect may be 'quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt,'" or "'structural defects,' which 'defy analysis by harmless error.'" *Jensen v. Romanowski*, 590 F.3d 373, 378 n.4 (6th Cir. 2009) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1717 (1993) (quotation omitted)). With "trial errors," the reviewing court evaluates directly whether the error had a substantial and injurious effect in determining the jury's verdict or other case result. *Id.* The query focuses on whether "grave doubts"

exist as to the effect of error. *Id.* (citing *O'Neal v. McAninch*, 115 S. Ct. 992, 993-94 (1995)). If any error had little or no effect, then no habeas relief should be afforded. *Id.* However, if the reviewing court finds itself at least in "virtual equipoise" about the harmlessness of the error, the court must grant the writ. *Id.* As to "structural defects," reversal of the state-court conviction may be required without harmless error analysis. *Id.* Generally, federal habeas corpus relief does not lie for errors in the application of state law unless such errors result in the denial of a fundamentally fair trial. *See Estelle v. McGuire,* 112 S. Ct. 475, 479-80 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[.]"); *accord Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008).

## III.   ANALYSIS

Petitioner here raises six total claims, which, solely for ease of organization, the Court groups into claims related to (A) trial counsel's performance and (B) trial court constitutional error. Specifically, Allen alleges two distinct claims of ineffective assistance and one claim of cumulative counsel error. Petitioner also asserts that he was denied a fair trial and reliable sentencing when members of the victim's family wore t-shirts at trial bearing a picture of the victim. He further argues that the trial court denied him a fair trial when Detective Bocook testified to Allen's refusal to cooperate after Allen had received *Miranda* notice. Finally, Allen alleges that the trial court erred in permitting part of Bocook's testimony because it amounted to improper expert testimony. Each habeas argument here fails.

**A.      Claims Related to Trial Counsel's Performance**

Allen's § 2254 petition sets forth multiple ineffective assistance of counsel claims, which present mixed questions of law and fact.  *See Strickland v. Washington*, 104 S. Ct. 2052, 2070 (1984); *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004).  Ineffective assistance claims typically fall under the "unreasonable application" clause, which governs such mixed questions.  *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008) (citing *White v. Mitchell*, 431 F.3d 517, 523-24 (6th Cir. 2005)).  When asserting an ineffective assistance of counsel claim, a petitioner must prove both deficient performance and prejudice.  *Strickland*, 104 S. Ct. at 2064; *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  In order to prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment."  *Strickland*, 104 S. Ct. at 2064.  A petitioner meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 2064-65.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.  Deficient performance is considered constitutionally prejudicial, the second prong of the analysis, only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 2064.  In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 2068.  When evaluating prejudice, courts must take into consideration the "totality of the evidence before the judge or jury."  *Id.* at 2069.

As previously noted, federal courts need not defer to ultimate factual findings regarding the performance and/or prejudice prongs of the effectiveness analysis. However, the "underlying facts" supporting such state-court decisions warrant deference. *Strickland*, 104 S. Ct. at 2070.   Recently, the Supreme Court commented on the interaction between the section 2254(d) and *Strickland* standards of review.  *See Richter*, 131 S. Ct. 770.  The Court emphasized that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."  *Id.* at 785.  Thus, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*  Later, the Court stated that it is "difficult" to establish a state court's application of *Strickland* as unreasonable under § 2254(d), noting that both standards are "'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Id.* at 788 (citations omitted).  The Court cautioned habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)."  *Id.*  According to the Court, under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  Additionally, the Court noted that "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial."  *Id.* (citation omitted).  Therefore, the Court conducts its analysis in accordance with the *Strickland* standard and AEDPA comity principles.

A.  *Counsel's Alleged Failure to Call Witnesses*

Allen first argues that counsel provided ineffective assistance in failing to call witnesses to refute the prosecution's case of premeditated murder.  DE #1 (Petition) at 5. Petitioner alleges that Charlotte Allen (Charlotte) and Dennis Gamble would have contradicted the testimony of Commonwealth witness Jeff Rhodes.[6]  Petitioner states that Rhodes testified that, in Charlotte's presence, Allen told Charlotte to warn Brown "to get a pine box ready because I'm coming to get my money."  DE #8 (Reply) at 10.  Allen alleges that Charlotte and Gamble would have denied that Allen made the pine box statement.  Additionally, Allen asserts that counsel did not fulfill a testimonial promise made to the jury, about Charlotte's testimony, during opening statements.   Respondent defends the Kentucky court's findings as reasonable.  DE #6 (Response) at 17-20.

Allen first raised the theory in his RCr 11.42 motion.  At the 11.42 hearing, Allen called Charlotte, Arial Allen (daughter of Petitioner and Charlotte), and Dennis Gamble. DE #6-20 (Trial court findings).  The Court received and reviewed the entire hearing. Charlotte and Gamble both denied hearing Allen make the pine box comment.  *Id.* at 4-5. Both Charlotte and Gamble testified that, had counsel called them, they would have testified as such at trial.  Arial Allen "stated that she observed her father firing a gun prior to Mr. Allen leaving to go to Mr. Brown's, she said it was a handgun."  *Id.* at 4.

Allen's trial counsel, Hon. Michael Curtis, also testified at the hearing, noting that he did his own investigatory work and was aware of the realm of potential testimony.  *Id.* at 5.  Curtis noted that he would not call a witness if he believed the testimony had the potential to hurt Allen.  As to Charlotte, Curtis did not call her because he believed it

---

[6] So identified in the Supreme Court decision, though the name actually may be Rhoden.

would do more harm than good.  Specifically, "her testimony had the potential of allowing the Commonwealth to highlight the 'pine box' issue and go into whether or not she made a call to the victim warning him that Mr. Allen was on his way there." *Id.*  As Curtis did not want to highlight the pine box comment, he declined to call Charlotte.  As to Gamble, Curtis did not remember any specific statement made by Gamble regarding a "pine box" and noted that Gamble may have said other things that Curtis did not want to come out at trial.  The trial court expressly noted: "One could see from the testimony of Mr. Gamble at the 11.42 hearing that if called to the stand, the Commonwealth would have been given an opportunity to highlight some potentially damaging facts regarding Defendant." *Id.* at 5-6.  Gamble did testify, in the 11.42 context, that Allen threatened violence against Brown on the day in question.  *See* DE #11 (Conventional Filing).

The trial court denied the 11.42 motion, finding that Curtis "was aware of what [the potential witnesses] had to offer the Defendant's case and what damage they could potentially cause if the Commonwealth was given an opportunity to cross-examine them." *Id.* at 6.  The court labeled counsel's decision as "tactical and strategic" and made in the heat of the case, noting that such choices "cannot be second guessed in hindsight by a reviewing court on an 11.42 motion." *Id.* at 6.  The Kentucky Court of Appeals affirmed: "The determination not to call additional witnesses was a matter of trial strategy based on Curtis's reasonable belief that the witness testimony at issue would damage Allen's defense more than bolster it, and Curtis testified that he fully investigated the case and conducted a defense based on that investigation." *Allen*, 2012 WL 256168, at *3.

Allen fails to justify displacement of the disposition by the Kentucky courts. During the evidentiary hearing, Curtis testified that he conducted his own investigation and interviewed both Charlotte and Gamble.  He further advised that he would not have called any witness with the potential to hurt Allen.  Curtis testified to his belief that calling Charlotte would do more harm than good, a strategy consistent with trying to avoid highlighting the pine box comment.  Further, although Curtis could not articulate a specific reason as to why he did not call Gamble, even the trial court found that calling Gamble could have negatively exposed Allen.  The assessment by Kentucky surely is a reasoned review of *Strickland* compliance.

The Kentucky courts identified the correct legal principles and, on this record, the Court cannot say that the state court's application was objectively unreasonable or contrary to clearly established Supreme Court precedent.  "'A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant.'"  *Pillette v. Berghuis*, 408 Fed. App'x 873, 884 (6th Cir. 2010) (quoting *Millender v. Adams*, 376, F.3d 520, 527 (6th Cir. 2004)).  Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Wiggins v. Smith*, 123 S. Ct. 2527, 2335 (2003) (quoting *Strickland*, 104 S. Ct. at 2066).  As noted by the trial court, Curtis did not want to dwell on the "pine box" issue because "the more you dwell on an issue, the more you highlight to the jury that it is an important point."  DE #6-20 at 5.  The trial court found that counsel was aware of what each witness's testimony could offer the case and what damage cross-examination could potentially cause.  *Id.* at 6.  The determination that Curtis legitimately chose against calling the potential witnesses is valid under the

13

deferential *Strickland* rubric.  Finally, the Court notes that the jury convicted Allen of wanton, not intentional murder.  Thus, in that respect, Allen's defense was successful despite not calling Charlotte and Gamble.[7]

Allen also alleges that counsel failed to follow through on a promise made during opening statements.  DE #1 (Petition) at 1; DE #8 (Reply) at 15-17.  Allen seeks *de novo* review of the claim because the trial court did not particularly address the theory in its RCr 11.42 order.  Respondent did not address the matter in his response.  The Court's summary rejection of the claim is an adjudication of each sub-argument presented, so the Court will not engage in *de novo* review.  *Richter*, 131 S. Ct. at 784.

In some scenarios, "'little is more damaging than to fail to produce important evidence that has been promised in an opening.'"  *Plummer v. Jackson*, No. 099-2258, 2012 WL 3216779, at *6 (6th Cir. 2012) (quoting *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988).  A jury faced with an unfulfilled promise may count the unfulfilled promise against the Defendant and his attorney.  *Id.*  In *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010), the court found: "[I]t is unreasonable for counsel to promise testimony to the jury without first examining the availability and soundness of such testimony where counsel could, and should, have discovered these details prior to trial."  *Id.*  (citing *English*).  Unlike *Plummer*, which involved a promise regarding the defendant's own testimony, the testimony in *English*, like here, was that of a third-party witness.

---

[7] The Kentucky Supreme Court made a similar observation, albeit in a different context. *See Allen*, 286 S.W.3d at 233 ("After all, if the jury had accepted Brown's uncle's testimony at face value, it would have convicted Allen of intentional, not wanton, murder since the uncle testified that he heard Allen state that he had intended to kill Brown.").

Here, Allen far overstates what Curtis "promised."  The Court has reviewed the full opening statements.  Neither side mentioned the "pine box" comment, and Curtis certainly never promised a witness to refute the unreferenced remark.  Overall, Curtis simply gave a general proof roadmap and focused on the accidental nature of the shooting from the defense perspective.  He did state that Charlotte would testify, but he never promised (or indicated) who would call her.  He said Charlotte would testify about the alleged phone call to Brown's house, but that aspect of testimony is not Allen's focus here.  DE #8 (Reply) at 6 ("defense counsel promised the jury they would hear testimony that would refute the 'pine box' statement").  Curtis's own 11.42 testimony indicates he was not overly concerned about the "pine box" remark, and he certainly made no promises about it in opening.

By the time of the defense case, the Commonwealth had spent several days putting on its proof.  Curtis had interviewed both Charlotte and Gamble, so he knew the pros and cons of their stories.  It is reasonable to think that trial developments, including case-in-chief testimony, may have dissuaded Curtis from venturing forward with Charlotte's testimony.  The Court accepts Kentucky's *Strickland* application, which rationally accounts for the battlefield tactical decisions trial lawyers must make in an ever-changing landscape.  Any reasonable review of Curtis's calculus indicates a lawyer well-familiar with the facts making informed, strategic choices about witnesses and proof.  Such is not *Strickland* fodder, as Kentucky reasonably determined.

In any event, as Kentucky alternately determined, no basis exists for thinking the witnesses would have mattered.  On the incident date, Allen undoubtedly went, armed, to get his money from Brown.  Rhodes testified at trial that Allen stated: "Charlotte, go call

15

them and tell them to get a pine box ready, 'cause I'm coming to get my money.'"   DE

#11 (Conventional Filing).  Rhodes indicated that Allen only started making statements

when Charlotte entered the room.  *Id.*  Although Charlotte testified at the RCr 11.42

hearing that she did not hear Allen make a statement about a pine box, she admitted on

cross-examination that he could have made a statement outside her presence.  *Id.*

Charlotte affirmed that she would have testified that Allen, agitated, wanted to "fight"

Brown and that Petitioner indicated that Brown "was going to take an ass whooping."  *Id.*

at 10:28:45.  Though he denied hearing a pine box comment in the 11.42 context,

Gamble, at best, would have testified at trial that Allen intended to "whoop" Brown's

"ass for the money [Brown] owed him."  *Id.* at 10:54.

Brown lay shot, and witnesses heard Allen declare he had meant to kill Brown.

Allen then chucked the gun at a road-side dump.  The no prejudice finding here is

unassailable.

### B.  *Counsel's Alleged Failure to Retain an Expert Witness*

Allen next alleges that counsel should have retained a medical and ballistics

expert to support the defense theory.  DE #1 (Petition) at 7.  Per Allen, the "testing and

analysis would have confirmed that the victim was wounded during a struggle and that he

was not assassinated."  *Id.*  Allen also asserts that counsel compounded any error by

"commenting to the jury that the state should have conducted these tests."  Petitioner

indicates that counsel's comment opened the door for the prosecution to indicate that

Allen could have performed the tests, which resulted in the jury believing that Allen

could not prove his defense.  Finally, Petitioner alleges that counsel failed to obtain his

medical records, which allegedly would have shown that he has a limited range of motion and thus undercut the prosecution theory.  *Id.*

Respondent concedes that Allen first raised the claim in his RCr 11.42 motion but otherwise asserts that he waived the issue for purposes of appeal by failing to present any evidence of the claim during the 11.42 evidentiary hearing.  DE #6 (Response) at 24 (citing *King v. Commonwealth*, 408 S.W.2d 204, 205 (Ky. 1966) and *Matthews v. Commonwealth*, 468 S.W.2d 313, 314 (Ky. 1971)).  Allen defends against procedural default in reply.  DE #8 (Reply) at 17-24.

Allen raised the issues of a ballistics expert and his alleged physical limitations in his *pro se* 11.42 motion.  DE #6-16 at 3-4; DE #6-17 at 16-23.  At the 11.42 hearing, Allen only presented evidence regarding counsel's failure to call lay witnesses; he did not present any proof on the instant claim.  In a pre-hearing notice, interim appointed counsel noted that the "remaining [*i.e.,* nonhearing] issues either can be ruled upon from the record or are without merit."  DE #6-19 at 1.  The word "merit" is footnoted, and the footnote states: "Specifically, counsel through its investigator has determined that the allegation of 'seating of an unqualified juror,' Part D., is without merit.  (Movant *pro se*, alleged that a juror resided outside Greenup County at the time of trial.)"  *Id.* n.1.  The trial court ultimately denied RCr 11.42 relief but did not address the specific claim in its order.

Allen appealed *pro se*, and the Kentucky Court of Appeals addressed the matter:

[W]e find no basis for concluding that Allen's counsel was ineffective in failing to call an expert witness who would testify about the shape of the bullet wound.  Allen was availed of the opportunity to prosecute this argument at the hearing, but did not.  It cannot reasonably be argued that but for this failure, the outcome of the proceeding would have been different or that it denied Allen a fair trial.

*Allen*, 2012 WL 256168, at \*3.

First, the Court rejects Respondent's procedural default theory.  Under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), a court undertakes a four part analysis when a state argues that a petitioner defaulted a federal habeas claim by failing to comply with a state procedural rule.  The first inquiry requires a court to assess whether there is a state procedural rule, applicable to the petitioner's claim, with which the petitioner failed to comply.  *Id.*  Second, a court must determine whether the state courts "actually enforced the state procedural sanction."  *Id.*  Third, a court must decide whether the state procedural forfeiture is an "'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim."  *Id.*  Finally, if all three grounds are met, a petitioner must demonstrate "cause" for failing to follow the rule and show actual prejudice from the alleged error.  *Id.*

Contrary to Respondent, the Court finds that Allen did not waive/default the expert claim when he did not present evidence on the claim at the evidentiary hearing. "A hearing is not required on each and every issue raised in an RCr 11.42 motion."  *Wilson v. Commonwealth*, 975 S.W.2d 901, 904 (Ky. 1998).  Further, even if a trial court limits proof during a hearing to particular issues, the court can still rule on the remainder of the claims from the record.  *Id.*  Plainly, Allen raised the claim in his *pro se* 11.42 motion.  DE #6-16; DE #6-17.  The court subsequently appointed Allen counsel, and Allen filed a notice that he would only present evidence regarding counsel's alleged failure to call witnesses.  The notice specifically stated that an allegation of an unqualified juror was meritless but otherwise indicated that the trial court could decide the remaining issues from and on the record.

18

*King* does generally stand for the proposition that failure to present evidence on a specific claim at an RCr 11.42 hearing waives the issue. However, a petition could present a blend of hearing-based and non-hearing-based theories, and the trial court still must "rule on all of the issues raised in [an RCr 11.42] motion." *Wilson*, 975 S.W.2d 904. Here, Allen specifically stated that the trial court could decide the expert issue on the record. He decried one claim regarding juror residence as meritless, but he otherwise presented the claims to the trial court. On this record, the Court cannot find that *King* would bar Allen's claims or that Allen waived his claims.

Further, the Court cannot find that the Kentucky Court of Appeals actually ruled that Allen defaulted the claim. The appellate court noted: "Allen was availed of the opportunity to prosecute this argument at the hearing, but did not." *Allen*, 2012 WL 256168, at *3. A lack of proof does not necessarily indicate default. The court couched its decision in *Strickland* language, suggesting a merits ruling as opposed to default: "It cannot reasonably be argued that but for this [*i.e.,* trial counsel's] failure, the outcome of the proceeding would have been different or that it denied Allen a fair trial." *Id.* Accordingly, on this record, the Court cannot say that Allen defaulted the claim.

Regardless, Allen is not entitled to § 2254 relief. "The decision whether to call a witness is generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel." *Samatar v. Clarridge*, 225 Fed. App'x 366, 372 (6th Cir. 2007) (citation omitted). Then (as now) Allen fails to offer any substantive proof that testimony regarding the angle and trajectory of the bullet would have corroborated a theory that Brown charged him and the gun fired accidentally. Petitioner also asserts that gunshot residue analysis would prove

19

that the gun fired while still in Allen's pants.  DE #8 (Reply) at 23.  However, Allen

makes wholly unsupported, lay assertions.  Allen included the expert theory in his 11.42,

which the trial court summarily rejected. The appellate court likewise rejected the theory

on prejudice grounds. Thus, there was a state adjudication, placing the theory under

*Richter* and *Pinholster*.  This means that the Court must assess the propriety of the state's

ruling on the state's contemporaneous record.  The Kentucky courts faced an expert

argument with nothing but conjecture in support.  In other words, Allen offered no

evidentiary substance to indicate what a ballistics examination may have shown.  Petition

had the burden there, as he has it here.  Kentucky's decision plainly was appropriate

under the doubly-deferential *Richter* rubric.

Because the state court's application of *Strickland* was neither contrary to or an

unreasonable application of federal law, Allen is not entitled to relief on the claim. In

*Thorne v. Timmerman-Cooper*, petitioner similarly argued that counsel was ineffective

for failing to hire a forensic expert.  *Thorne v. Timmerman-Cooper*, No. 09-4098, 2012

WL 1130420 (6th Cir. April 4, 2012).  The Sixth Circuit found that Thorne had failed to

show both deficient performance and prejudice.  As to performance, the court, applying

*Harrington*,[8]  noted that Thorne "presented nothing beyond conjecture to undermine the

---

[8]     In *Harrington*, petitioner alleged, as does Allen, ineffective assistance based on
counsel's failure to consult a forensic expert.  *Harrington*, 131 S. Ct. at 788.  In support
of his habeas petition to the California Supreme Court, petitioner submitted affidavits
from three different kinds of forensic experts.  *Id.* at 783.  That court denied relief, and
petitioner filed for federal habeas relief.  The district court denied his petition, the court
of appeals affirmed, and an en banc panel reversed.  The court of appeals found that
petitioner established both deficient performance and prejudice on the claim, but the
Supreme Court fully reversed.  The Supreme Court noted that "[r]eliance on 'the harsh
light of hindsight' to cast doubt on a trial that took place now more than 15 years ago is
precisely what *Strickland* and the AEDPA seek to prevent."  *Id.* at 789 (citation omitted).
Further, "[t]o support a defense argument that the prosecution has not proved its case it

20

state court's finding that the tactic chosen by the defense counsel was reasonable." *Id.* at *11. The Court also found that Thorne had not proven prejudice: "it is unlikely that defense counsel could have created sufficient doubt regarding the mechanics of the murder to undermine the jury's confidence . . . in light of the overwhelming physical evidence." *Id.* at *12. Accordingly, petitioner did not show a "'reasonable probability' that the outcome of his case would have been different if he had consulted a forensic expert." *Id.*

Here, Allen raised the claim but ultimately did not submit proof on the matter. His memorandum opines about the beneficial effects an expert would have provided, but he did not name an expert, proffer as to testimony content, or provide any information in support of his claim.[9]

### C. Cumulative Error

Petitioner also alleges cumulative error under the guise of *Strickland*. DE #1 (Petition) at 8. Allen contends that the aggregation of enumerated ineffective assistance claims deprived him of a fair trial and of a thorough direct appeal. DE #1 (Petition) at 8, 16. Specifically, Allen asserts that counsel (1) failed to object to portions of Detective

---

sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Id.* at 790. With respect to prejudice, the court concluded that the state court's decision on the merits of the *Strickland* claim "required more deference than it received" and declined to find prejudice. *Id.* at 792.

[9] The medical expert criticism suffers the same fate. The state courts summarily rejected the claim, and the record indicates utterly no evidentiary support of a theory that records or a medical expert would have mattered. By his own description, Allen fled the scene under duress with the gun (later found in a road-side dump). If Allen had worked all day moving a trailer, gotten into the later altercation, and hurriedly fled in his truck with the gun, it is implausible to think expert range of motion evidence would have made any difference. In any event, the issue is speculative because no proof exists. More importantly, Allen presented none to the state courts, and thus the summary disposition is beyond criticism. A party with the burden, who produces no proof, cannot possibly prevail.

Bocook's testimony which, per Allen, was expert testimony, (2) opened the door during cross-examination of Bocook, which allowed the prosecutor to comment on Allen's refusal to cooperate, and (3) failed to object to improper bolstering of two prosecution witnesses. *Id.* at 8. Per Allen, because of counsel's allegedly deficient performance, the "jury heard improper information and counsel failed to properly preserve these matters for direct appeal." *Id.* at 16.

The Warden relies on procedural default but otherwise defends the claim of cumulative error as not cognizable in the Sixth Circuit. DE #6 (Response) at 33-36. In reply, Allen encourages the Court to reconsider Sixth Circuit precedent. DE #8 (Reply) at 27.

The Sixth Circuit has consistently and explicitly held that a habeas petitioner cannot premise relief on a claim of cumulative trial errors. *E.g.*, *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."). Allen cursorily presented a claim of cumulative **counsel** error under *Strickland* at the state level. With similar concision, he raised the issue here. The state court only summarily adjudicated, but the Court notes that Allen had the burden of developing any particular error and demonstrating resultant prejudice. He did not adequately develop the theories in his state or federal filings.

Kentucky's adjudication fundamentally passes AEDPA scrutiny because there is no clearly established Supreme Court law endorsing the notion of cumulative counsel error as a route to relief. Thus, "it is *not* clearly established that ineffective assistance claims can or must be analyzed cumulatively." *Borden v. Thomas*, No. 5:10-CV-2962,

2012 WL 3030436, at *3 (N.D. Ala. July 23, 2012); *Williams v. Tucker*, No. 3:10-CV-238, 2012 WL 2675468, at *20 (N.D. Fla. 2012) ("The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims." (footnote omitted)).  Petitioner critiques Sixth Circuit cases on the overall theory of cumulative error, but he cites no Supreme Court precedent Kentucky's adjudication would violate.  Further, and critically, Allen independently developed none of his sub-arguments as stand-alone claims.  No basis for relief exists in this context.[10]

**B.  Trial Court Constitutional Error**

   *1.  T-shirts Bearing Brown's Picture*

   Allen alleges that he was denied a "fair trial and reliable sentencing" when various members of the victim's family wore t-shirts bearing Brown's picture in front of the jury.  DE #1 (Petition) at 10.  Per Allen, some individuals crossed the courtroom bar, while wearing the shirts, with the "specific intent of influencing the jury against the Petitioner."  *Id.*  Allen also alleges that the conduct continued throughout the trial, noting that the jurors were also exposed to the t-shirts outside the courtroom.

   Respondent defends the Kentucky Supreme Court's adjudication of the claim as reasonable under *Carey v. Musladin*, 127 S. Ct. 649 (2006), but also argues that there is no clear Supreme Court precedent to govern the precise factual situation here.  DE #6

---

[10] The Kentucky Supreme Court reviewed all of the matters, on direct review, at least for palpable error.  As to the expert issue, the Court reviewed that as properly preserved.  All of these areas concern attempts to second-guess the tactical choices of a lawyer engaged in cross-examination or formulating direct trial strategy.  Trial counsel's handling of testimonial objections and witness testimony is a sphere of much deference.  Further, none of the grounds savors of sufficient individual prejudice in this case, as Kentucky's adjudication undoubtedly could reasonably reflect.

(Response) at 37-39.  In reply, Petitioner cites the *Williams*/*Flynn*[11] principles in support of his claim, arguing that the t-shirts were so inherently prejudicial as to deny him a fair trial.  DE #8 (Reply) at 27-31.

Allen raised the theory on direct appeal, and the Kentucky Supreme Court denied relief. *Allen*, 286 S.W.3d at 227-230.  The Court described the issue:

> The parties agree that at least once during jury selection, Brown's father and brother appeared in the courtroom wearing t-shirts containing the words, "In loving memory," and displaying Brown's image.  And, for at least a short period of time, one of Brown's relatives wearing the t-shirt was spotted during a recess inside the bar in the area reserved for counsel and defendant.   The trial court denied Allen's motion to discharge the entire venire and permitted Allen's attorney to question venire members during voir dire about the effect, if any, the t-shirts would have on them.  During that questioning, none of the jurors stated that these t-shirts would have any bearing on how they viewed the case.

*Id.* at 227-228.  The Court questioned whether the issue was preserved but proceeded to address the merits and denied relief.  *Id.* at 228.

The Kentucky high court, quoting *Carey* and the Supreme Court of Kansas,[12] denounced the practice of spectators wearing attire emblazoned with the victim's photo but declined to find that wearing such items in the courtroom is "so inherently unfair as always to constitute reversible error."  *Id.* at 229.  In light of the venire members' responses that the t-shirts would not affect their jury service, the Court noted the lack of demonstrable prejudice and rejected Allen's contention that the t-shirts created a "situation of overwhelmingly inherent prejudice."  *Id.*

Allen is not entitled to § 2254 relief. In *Carey*, the United State Supreme Court considered whether spectators wearing buttons with the victim's image during trial

---

[11] *Estelle v. Williams*, 96 S. Ct. 1691 (1976); *Holbrook v. Flynn*, 106 S. Ct. 1340 (1986).
[12] *State v. Speed*, 265 Kan. 26 (Kan. 1998).

denied the defendant a fair trial.  *Carey,* 127 S. Ct. 649, at 72-73.  On appeal, the

California Court of Appeals applied *Williams* and *Flynn*, and the Ninth Circuit reversed,

finding the state court acted contrary to clearly established federal law and the holding

constituted an unreasonable application of that law.  *Id.* at 743.  The Supreme Court

reversed the Ninth Circuit, "[g]iven the lack of holdings from [the Supreme Court]

regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind

involved."  *Id.* at 77.  While not ruling on the precise issue, the Supreme Court indicated

that the *Williams* and *Flynn* test would not apply in cases where the conduct was not

state-sponsored.  *See id.* at 76 ("[W]e have never applied that test to spectators' conduct.

Indeed, part of the legal test of *Williams* and *Flynn*-asking whether the practices furthered

an essential *state* interest-suggests that those cases apply only to state-sponsored

practices.").

    Petitioner has not shown that the Kentucky high court unreasonably applied or

acted contrary to clearly established federal law.  Indeed, that court, in discussing *Carey*,

accurately noted that the Supreme Court described the issue as "'an open question in our

jurisprudence.'"  *Allen*, 286 S.W.3d 221, 228 (quoting *Carey*, 127 S. Ct. at 653).  In

reviewing a similar claim, the Fourth Circuit has stated:

> These precedents do not clearly establish that a defendant's right to a fair
> jury trial is violated whenever an article of clothing worn at trial arguably
> conveys a message about the matter before the jury.  It would not be
> objectively unreasonable to conclude that the jury's exposure to a T-shirt
> or button that could, but need not necessarily, be construed as conveying a
> message about the matter before the jury simply does not rise to the level
> of a constitutional violation in the way that it does when the court forces a
> defendant to appear before the jury in prison garb, allows the trial to be
> influenced or dominated by a mob, or allows the prosecution's key
> witnesses to have extensive interaction with the jury.  *See Smith v.
> Phillips*, 102 S. Ct. 940 (1982) (noting that "due process does not require a
> new trial every time a juror has been placed in a potentially compromising

25

situation" and that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote").

*Billings v. Polk*, 441 F.3d 238, 247 (4th Cir. 2006).

Allen cites nothing to the contrary and, although he requests the Court apply *Williams* and *Flynn*, such an analysis, on this record, would not comport with *Carey*. Petitioner cites nothing to indicate that the conduct complained about here was state-sponsored. In fact, Allen describes the t-shirts as an "intentional effort by *Brown's family* to elicit not only sympathy for Brown but also sympathy for Brown's family and influence the jury." DE #8 (Reply) (emphasis added). The trial court took precautionary measures and queried the venire regarding the effect, if any, of the t-shirts. All jurors denied that the t-shirts would affect them. *Allen*, 286 S.W.3d at 227-230. Kentucky's highest court found a lack of prejudice. Allen's claim fails because *Cary v. Musladin* forecloses any potential argument under § 2254(d)(1).

　　*2. Alleged Comment on Petitioner's Right to Silence*

Allen next alleges that the trial court impermissibly allowed Deputy Bocook to comment upon Allen's non-cooperation after Petitioner invoked his right to silence under *Miranda*. DE #1 (Petition) at 16. Following the shooting, Allen voluntarily surrendered to law enforcement. *Id.* Officers Mirandized Allen, and he initially cooperated and answered questions. At some point, however, Allen determined to invoke his right to silence. *Id.* He alleges that, during the trial, Deputy Bocook testified that "Allen refused to answer questions and cooperate with the investigation when the investigator's questions became harder." DE #8 (Reply) at 31. Per Allen, this was an inappropriate "direct comment" on Allen's right to remain silent. *Id.*

Respondent contends that Allen procedurally defaulted the claim by failing to raise a contemporaneous objection during trial.  DE #6 (Response) at 40.   In reply, Allen argues against default, and seeks to invoke *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  The gravamen of Petitioner's argument is that he tried to raise the issue of ineffective assistance of trial counsel in the 11.42 motion, but that appellate counsel failed to follow through, which, under *Martinez*, would excuse the default.   DE #8 (Reply) at 32-33.

Allen first raised the issue on direct appeal.  The Kentucky Supreme Court found the issue unpreserved, a point that Allen conceded, and reviewed the claim only for palpable error.  *Allen*, 286 S.W.3d at 226.  The high court denied relief, stating:

> Bocook's references to Allen's silence responded to Allen's counsel's persistent questions.  In other words, to combat Allen's counsel's argument that Bocook had not performed a proper investigation, Bocook attempted to explain that Allen's refusal to cooperate was the reason he had not taken photos of the scratch near Allen's eye.  And since Allen's counsel asked questions that led Bocook to testify that he did not photograph or inquire about the scratch(es) or swelling near Allen's eyes because Allen refused to cooperate, it was not improper for the Commonwealth to ask Bocook on redirect examination about the last question Bocook had asked Allen before Allen ceased cooperating.  So we do not find that Bocook's references to Allen's lack of cooperation or invocation of his right to silence rise to the level of palpable error.

*Id.* at 227.

Allen (in the *Strickland* context) raised the issue in his *pro se* 11.42 motion but did not present any evidence supporting the claim during the evidentiary hearing.  The trial court did not explicitly address the claim in its 11.42 Order, and Allen included the issue under a claim of cumulative error in a *pro se* appeal.  DE #6-24 at 22-24.  The Kentucky Court of Appeals wholly denied relief but did not address specifically the merits of the claim.

Allen's counsel did not object to the testimony at trial, and when Petitioner raised the matter on appeal he thus received only palpable error review under Kentucky law. Such limited review generally is viewed as signaling procedural default under Sixth Circuit precedent. *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). A petitioner may avoid default by showing cause and prejudice, and ineffective assistance can suffice. *See id.* However, as with any *Strickland*-based showing, the petitioner must then establish ineffective assistance at a constitutional level and adequate *Strickland* prejudice. This means a showing of serious professional error and a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation omitted).

Here, the procedural default issue, always complicated and thorny when dependent on ineffective assistance, makes little practical difference under the review standards. The Kentucky Supreme Court in fact did review the claim. The palpable error standard expressly enables review to protect a defendant's due process entitlement and against an error yielding the "probability of a different result." *See Allen*, 286 S.W.2d at 226-27 (discussing RCr 10.26 meaning). Indeed, the Kentucky decision applied that court's then-recent decision in *Coulthard v. Commonwealth*, 230 S.W.3d 572 (Ky. 2007), applying the same preserved error analysis in the palpable error context.

The examination context also matters. The jury had already seen the full interview. Curtis was questioning Bocook about the quality of the detective's investigation, specifically why Bocook had not further explored physical injuries to Allen. Bocook's response – that he had not taken injury photos because Allen ceased cooperating – was something of a non-sequitur. Curtis continued to press Bocook to

make his point about Allen's apparent injuries and the lack of investigative responsiveness. Ultimately, counsel drew the line as occurring at the point where the investigator began accusing Allen of a crime. The fact that the Commonwealth, on re-direct, clarified the end-point of Allen's interview hardly means that Curtis erred by not lodging an objection. Further, the context supports the Kentucky Supreme Court's view that the question/answer dynamic did not implicate Allen's due process rights. This was not commentary on silence to establish a guilt inference but rather an effort to buttress the detective against the damage of cross-examination. The testimony pinpointed a matter in dispute and surely was not an orchestrated commentary by the prosecution on Allen's election of silence.

Critically, Allen nowhere discusses how the Kentucky Court's handling transgressed clearly established United States Supreme Court precedent. Though he cites *Doyle v. Ohio*, 96 S. Ct. 2240 (1976) in reply, Allen does not discuss the claim elements or discuss how *Doyle* would apply in a scenario where a defendant received the *Miranda* warnings, gave an interview, but then (much later) halted the interview. Again, the entire interview appeared before the jury, and Allen does not criticize that. He fails to displace Kentucky's treatment under the deferential AEDPA standard.[13]

---

[13] The Court sees no basis for application of *Martinez* to any of the claims in Allen's petition, and previously has held the case inapplicable to Kentucky-based claims. *See Robert C. Foley v. Randy White, Warden*, 6:00-CV-552 (E.D. Ky.) at DE #126 (Recommended Disposition). In any event, the procedural rulings here do not call for analysis of any effect of *Martinez*. The Kentucky courts did rule on the full 11.42 motion, if only summarily, thus here preserving any included claims from procedural default.

*3.  Deputy Bocook's Alleged Expert Testimony*

Allen's final claim contends that the trial court improperly allowed Deputy

Bocook to testify as an expert.  DE #1 (Petition) at 16; DE #8 (Reply) at 33-36. Per

Allen, Bocook "offered the opinion that if the events happened the way Mr. Allen said

they did, Mr. Allen would be the victim because he would have blown his leg off.  This

was direct expert opinion testimony about the version of events given by Mr. Allen's

[*sic*] provided solely to attack the veracity and credibility of Mr. Allen's version of

events."  DE #8 (Reply) at 34.

In response, Warden Meko defends the Kentucky court's ruling as reasonable.

Specifically, Respondent alleges that *Daubert v. Merrell Dow Pharm., Inc.,* 113 S. Ct.

2786 (1993), "did not set a constitutional standard for the admissibility of expert

testimony; the case simply examined the standard for the admissibility of scientific

evidence in federal trials conducted in federal courts under the Federal Rules of

Evidence.  Thus, a claimed violation of *Daubert* and the Kentucky Rules of Evidence

does not equal a constitutional violation."  DE #6 (Response) at 48 (citing *Norris v.

Schotten*, 146 F.3d 314, 335 (6th Cir. 1998)).

Petitioner's reply argues that Bocook's testimony was prejudicial because Bocook

was not an expert, and thus did not have the proper qualifications to opine regarding the

trajectory of a bullet.  DE #8 (Reply) at 35.  Allen argues that admission of the testimony

resulted in a violation of due process.  *Id.*

Allen raised the issue on direct appeal, and the Kentucky Supreme Court

described the claim as "questionably preserved at best."  *Allen*, 286 S.W.3d at 225.  The

court noted that the Commonwealth played for the jury a tape, in its entirety (and without

30

objection), of Allen making the full statement to Deputy Bocook.  *Id.*  During the interview, Bocook queried Allen as to why Allen had not been shot if the gun was in Allen's pants when it discharged.  Allen indicated that "he did not shoot Brown and would not have intentionally hurt him."  *Id.*

On cross-examination, Curtis asked Bocook why he did not take pictures of a visible scratch on Allen's face; Bocook responded in turn, noting that it was because Allen stopped cooperating.  Specifically, "[a]t one point, Allen's counsel stated, 'when you [Bocook] accused him of something, he [Allen] quit [cooperating],' to which Bocook responded that Allen 'quit when the questions became harder.'"  *Id.*

On redirect, the state asked Bocook about the last question he asked Allen. Bocook initially answered "non-responsively," and the Commonwealth repeated its question.  "Bocook began his response by stating, '[c]ommon sense would,' at which point Allen objected without elaboration."  The trial court directed Bocook to answer the question without opinion, and Bocook stated the questions was, "[I]f you fell down with a gun in your pants[,] you should be the victim then.  The gun should have shot you in the leg."  *Id.*

Then, and now, Allen alleges that the court improperly permitted Bocook to offer opinion testimony, namely that the injuries Brown suffered could not have occurred as Allen alleged.

The high court assumed preservation for purposes of argument but denied relief on the merits.  *Id.*  During cross-examination of Bocook, Curtis stated to Bocook that "when you started accusing him of something, he quit."  *Id.* at 226.  Thus, per the Kentucky Supreme Court, the Commonwealth was permitted to ask Bocook on redirect

about the question in which he allegedly "accused Allen of committing a crime." *Id.* The Court noted that, while one witness cannot generally accuse another witness of lying, a police officer can question a Mirandized suspect about "holes or potential falsehoods in that suspect's theory of events in an effort to get the suspect to tell the complete truth." *Id.* (citation omitted).

Allen's attack is here nonsensical. The full interview had already been played. The Commonwealth simply asked Bocook to restate the last question he asked. Bocook attempted to comply by restating the question, which he himself noted was "not verbatim." His question related to the logic of the accidental shooting theory, but the testimony was about the question, not about the logic. Bocook's recitation concerned a question already asked, not an opinion presently given.

Ordinarily, federal habeas review would not encompass error predicated on state evidentiary rulings. The only exception is an error of sufficient magnitude to deny the fundamental fairness imported within due process. *See Henness v. Bagley*, 644 F.3d 308, 326 (6th Cir. 2011) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2005)); *id.* ("When reviewing a claim of evidentiary error in a federal habeas petition, we defer to the state court's interpretation of its own rules of evidence and procedure.") (citing *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)).

Here, the Kentucky Supreme Court applied its normal rules to a state-based ruling on admissibility of evidence. Allen cites to no United States Supreme Court case that would impose a constitutional gloss on this determination of proper trial testimony. As such, he has failed to justify relief under § 2254(d).

**IV. Certificate of Appealability**

A certificate of appealability may issue where a habeas petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Petitioner has not made a "substantial showing" as to any claimed denial of rights. The Court believes its determination on the merits, which hinges on the deferential AEDPA standard and a reasonable and factually supported result from the state court, is not debatable. None of the claims presents a close issue involving a violation or unreasonable application of clearly established federal law, or any other avenue of relief under § 2254. As such, Allen is not entitled to a certificate of appealability.

**V. Recommendation**

The Court **RECOMMENDS** that the District Court **DENY** Allen's § 2254 petition (DE #1) and **not** issue a certificate of appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection

consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 5th day of February, 2013.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**