UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| CHARLES ALLEN, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 0: 12-17-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JOSEPH MEKO, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER ADOPTING** |
| Respondent. | ) | **RECOMMENDED DISPOSITION** |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Charles Allen's Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. [Record No. 1] Consistent with local practice, the matter was referred to United States Magistrate Judge Robert E. Wier for initial consideration pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Wier filed his Recommended Disposition on February 5, 2013. [Record No. 14] Based on his review of the record and the applicable law, the magistrate judge recommended that Allen's petition be denied. Allen then filed objections to the magistrate judge's Recommended Disposition within the extended time permitted by the undersigned. [*See* Record Nos. 15, 16 and 17.]

**I.**

Although the Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which objection is made, 28 U.S.C. § 636(b)(1)(c), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual

or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). A party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation waives the right to appeal. *See Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Further, a general objection to the entirety of a magistrate judge's report has the same effect as a failure to object. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).

Allen has filed six specific objections to Magistrate Judge Wier's Recommended Disposition. [Record No. 17] In addition, he asserts a claim of cumulative error and also argues that the magistrate judge should not have concluded that a Certificate of Appealability should not issue regarding any of his claims. Having conducted a *de novo* review of the portions of the record to which Allen objects, the Court will deny his request for collateral relief.

## II.

### A.     First Objection – Failure To Call Witnesses To Refute The State's Case

Allen's first objection concerns the allegation that his trial attorney was ineffective under the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984), by failing to call witnesses to refute a statement Allen allegedly made immediately prior to confronting Chad Brown about a debt. The essence of the statement was that someone needed to get a "pine box" ready for Brown. Allen asserts that his attorney's position on this point has changed. He claims that his attorney initially admitted that he would have tried to contradict the statement if he could, but he now contends that his trial strategy was to "minimize" the statement. According

to Allen, trial counsel could have called two witnesses (Charlotte Allen and Dennis Gamble) to refute the statement allegedly made to Jeff Rhodes, a witness offered by the Commonwealth.

As noted by Magistrate Judge Wier, this argument was made during the hearing on Allen's RCr 11.42 motion before the Greenup Circuit Court. [Record No. 14, p. 11] During that proceeding, both Charlotte Allen and Dennis Gamble testified that they did not hear the petitioner make the alleged "pine box" comment. However the petitioner's trial counsel, Michael Curtis, testified that, based on his pre-trial investigation, he was aware of the potential testimony of the witnesses and would not call them if he believed that their testimony could hurt Petitioner Allen.[1] According to Curtis, Charlotte Allen's potential testimony would allow the Commonwealth to highlight the "pine box" comment and also allow cross-examination regarding whether she called the victim to warn him that the petitioner was coming to confront him. And Curtis testified that he chose not to call Gamble as a witness because he had the potential of testifying to other matters which would have hurt the defense of the case. The merit of this strategy was noted by the trial court which indicated that, in the course of the RCr 11.42 hearing, Gamble did testify that Allen had threatened violence against Brown on the day in question.

---

[1] Allen is correct in asserting that an attorney who conducts his own investigation is not insulated from a *Strickland* claim. However, he is incorrect in asserting that a *Strickland* violation occurred here when his attorney did not call a witness under subpoena. The fact that attorney Curtis may has issued a subpoena for Gamble to testify at trial does not mean he was ineffective for later deciding not to call Gamble to testify during the defendant's case-in-chief. Trials are dynamic. In many circumstances, the negatives associated with a particular witness must be balanced against the positives resulting from his or her expected testimony. Depending on the nature of testimony and how its reception by the jury is perceived, decisions regarding who will be called as defense witnesses during trial often change. Based on the record in this case, the Court does not conclude that Curtis was ineffective for subpoenaing Gamble but later deciding not to call either Gamble or Ms. Allen during presentation of the defendant's case. Likewise, the Court rejects the petitioner's argument that the fact that Charlotte Allen was not called by the Commonwealth objectively reflects that her overall testimony would have been beneficial to his case. It is equally plausible that the Commonwealth preferred to cross-examine Ms. Allen if called as a defense witness, rather than to call her directly.

Based on the foregoing, the state courts reviewing this issue concluded that Curtis was aware that the potential witnesses could damage Allen's case more than they could bolster it if they were subject to cross-examination. This Court agrees with the Magistrate Judge's assessment that the Kentucky court's disposition of this issue was not incorrect but, instead, constitutes a "reasoned review of *Strickland* compliance." [Record No. 14, p. 13] Further, this Court cannot conclude that their application of the correct, identified legal principles[2] was objectively unreasonable or contrary to clearly established Supreme Court precedent. Thus, for the reasons outlined more fully in the Magistrate Judge's Recommended Disposition, Allen's First Objection will be overruled.

**B.     Second Objection – Counsel's Failure To Keep A Promise Made During Opening Arguments**

During opening statements, neither Allen's attorney nor the attorney representing the Commonwealth mentioned the "pine box" comment. And while Curtis did not promise anything during his opening, he provided a summary of what would be shown during trial with a general focus on the accidental nature of the shooting. Regarding the potential testimony of Charlotte Allen, Curtis advised the jury that she would testify regarding the alleged phone call to the victim's home, but he did not state who would call Ms. Allen as a witness.

---

[2] As noted by Magistrate Judge Wier, "'[a] defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant.'" *Pillette v. Berghuis*, 408 Fed. App'x 873, 884 (6th Cir. 2010) (quoting *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004)). Further, "'strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (quoting *Strickland*, 466 U.S. at 690-91).'" [Record No. 14, p. 13]

Retreating from his original position, the petitioner concedes that his trial attorney did not promise during his opening statement that he would call Charlotte Allen as a witness. However, he asserts that counsel did promise the jury that they would hear evidence to corroborate his theory of the case. And he asserts that Charlotte Allen was a key witness in providing such corroboration. Thus, he contends that Curtis provided ineffective assistance in failing to call her as a trial witness. He contends that, because the expected proof did not changed from the time of opening statements until the close of his case, this Court cannot conclude that the decision not to call Charlotte Allen constitute trial strategy made during the heat of litigation.

The Court rejects the petitioner's arguments for the same reasons outlined in the Magistrate Judge's Recommended Disposition. First, by the time Allen presented his case, the Commonwealth has spent several days offering testimony and other evidence. And because Curtis had interviewed the potential witnesses, he was aware of the pros and cons of their potential testimony. As this Court noted in footnote 1 above, it is reasonable to conclude that developments during trial certainly affected counsel's determinations of what additional evidence and testimony should be presented to the jury and what points should be emphasized.

Second, as the state courts have concluded previously, there is no basis for thinking the testimony from Ms. Allen and/or Gamble would have altered the jury's decision. Jeff Rhodes testified during trial that, as Ms. Allen entered the room, he stated: "Charlotte, go call them and tell them to get a pine box ready, 'cause I'm coming to get my money.'" [Record No. 11] Although Ms. Allen testified during the RCr 11.42 hearing that she did not hear the petitioner

make the statement about a pine box, she admitted on cross-examination that he could have made a statement outside her presence. Further, she confirmed that, if called during trial, she would have testified that the petitioner was agitated on the day of the offense and wanted to fight Brown and that he had said Brown "was going to take an ass whooping." [*Id.*] Next, although Gamble would have denied the "pine box" comment, he would also have testified at trial that Allen intended to "whoop" Brown's "ass for the money [that Brown] owed him." [*Id.*] And after Brown was shot, witnesses heard Allen state that he had intended to kill the victim. Under these circumstances, the Court agrees that the petitioner has not established prejudice.

### C. Third Objection – Counsel's Failure To Consult With Or Retain Expert Witness

Next, Allen contends that his attorney provided ineffective assistance of counsel by failing to consult with or call expert witnesses during trial. More specifically, he asserts that Curtis should have retained a medical and ballistics expert witnesses to support his theory of the case.[3] According to Allen, testing and analysis would have confirmed that Brown was wounded during a struggle and that he was not "assassinated." [Record No. 1, p. 7] Allen also claims that his attorney erred by commenting to the jury that the Commonwealth should have conducted the tests, thus opening the door for the prosecution to respond that Allen could have performed the tests (and therefore implying that Allen knew the results would support a finding of guilt).

Although Allen first raised this issue during his RCr 11.42 motion, he did not present any evidence in support of the claim during the subsequent hearing in state court. Additionally, as

---

[3] According to Allen, because he suffers from a limited range of motion, medical records would have demonstrated that he could not have committed the offense as alleged by the Commonwealth.

noted by the Magistrate Judge, the trial court did not address the specific claim at the time that it denied RCr 11.42 relief. While the Court agrees that Allen did not waive or default this claim by failing to present evidence during the RCr 11.42 hearing, he had not shown that he is entitled to habeas relief for the reasons he now argues.

Again, the decision regarding whether to call a trial witness is a matter of trial strategy. Here, Allen has not offered any proof that testimony regarding the angle and trajectory of the bullet which struck Brown would have corroborated the petitioner's theory that Brown had charged him and that the gun accidently discharged. Further, Allen's assertions that gunpowder residue analysis would confirm that the weapon was fired while still in his pants is wholly uncorroborated. When examining the state court's determination based on the record presented for its review, there is no basis for this Court to conclude that it was erroneous. *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (A habeas court should not grant relief "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.")

### D.     Fifth Objection – Victim's Family Wearing Tee-Shirts With A Picture Of The Victim In The Courtroom

Allen claims that he was denied a fair trial because several members of Brown's family wore tee-shirts during the proceedings which bore the victim's picture. Additionally, he asserts that some of the family members crossed the courtroom bar while wearing the shirts with the specific intent of influencing jurors against him. [Record No. 1, p. 10] And he asserts that this wrongful conduct continued outside the courtroom where jurors were exposed to the shirts.

According to Allen, these actions were inherently prejudicial and denied him a fair trial. *Estelle v. Williams*, 425 U.S. 501 (1976); *Holbrook v. Flynn*, 475 U.S. 560 (1986) (when

courtroom arrangement is challenged as inherently prejudicial, the proper question is not whether jurors actually articulated a consciousness of some prejudicial effect but whether an unacceptable risk is presented of impermissible factors coming into play). In response, the Commonwealth points out that there is no clear Supreme Court precedent governing the issue presented by this objection. The Commonwealth also cites *Carey v. Musladin*, 549 U.S. 70 (2006), as support for its position.[4]

While the Supreme Court of Kentucky denounced the practice of spectators wearing clothing with victim's photos, it did not find the actions of Brown's family members to be so "inherently unfair" as to constitute reversible error in this case. Instead, after noting that, while the trial court denied a motion to discharge the entire venire, it permitted Allen's counsel to question members of the jury during voir dire about the effect, if any, that the tee-shirts would have on them. In response, no juror noted that the shirts would have any bearing on how they viewed the case. *Allen v. Commonwealth*, 286 S.W.3d 221, 227-230 (Ky. 2009). Thus, the petitioner did not demonstrate prejudice.

As the United States Magistrate Judge properly noted in his Recommended Disposition, in *Carey*, the Supreme Court addressed whether spectators wearing buttons containing the likeness of the victim during trial denied the defendant a fair trial. While not addressing the precise issue, the Court stated that the test set out in *Williams* and *Flynn* would not apply unless

---

[4] In addition to relying on the holdings in *Williams* and *Flynn*, Allen contends that habeas relief is appropriate because the fact demonstrate that the trial judge failed to keep proper control of the courtroom as shown by the challenged actions. Contrary to this assertion, the record does not demonstrate that a carnival or mob atmosphere was created by the actions of the Brown family. His reliance on *Sheppard v. Maxwell*, 384 U.S. 333 (1966), is misplaced. [Record No. 17, pp. 10-11]

the conduct in issue was state-sponsored. Here, Allen has not demonstrated that the Supreme Court of Kentucky unreasonably applied the holding in *Carey* or acted contrary to clearly-established federal law. Additionally, based on the measures taken by the trial court, he has not demonstrated any prejudice as a result of the challenged actions of the Brown family members. This Court also concludes that Allen has not shown that the courtroom arrangement and the manner it was handled by the trial judge violated standards set forth in *Williams*, 425 U.S. 501, or *Flynn*, 475 U.S. 560. This objection, therefore, fails.

### E. Sixth Objection – The Lead Detective's Comments Regarding Petitioner's Silence After Petitioner Invoked His Miranda Rights

After Allen shot Brown, he surrendered to law enforcement. After receiving *Miranda* warnings, Allen was questioned about the incident. He initially cooperated and answered questions. However, during the questioning, he invoked his right of silence. According Allen, during the trial, one of the officers who had questioned him testified that the petitioner "refused to answer questions and cooperate with the investigation when the investigator's questions became harder." [Record No. 8, p. 31]

Although Allen attempted to raise this alleged error on direct appeal, the Supreme Court of Kentucky found that the issue was not properly preserved for review. Thus, its review was limited to "palpable error." *Allen*, 286 S.W.3d at 226-227. And that court found no such error. Instead, it noted that Bocook's statements were in response to questions and implications that the investigator had not performed a proper investigation by failing to photograph scratches near Allen's eye. As a result, the court found it proper for the Commonwealth to ask Bocook about the last question Allen was asked before he ceased cooperating.

Contrary to Allen's current objection, the Magistrate Judge did not apply an incorrect standard review to this issue in the habeas context. Instead, as he properly noted, while procedural default often complicates a claim of ineffective assistance under *Strickland*, it makes little practical difference under the facts presented because the Supreme Court of Kentucky actually reviewed the claim to determine whether there was a "probability of a different result" absent the alleged error. *Allen*, 286 S.W.3d at 226-27. As outlined in the Recommended Disposition, at the time of the alleged error, the jury had observed Allen's interview. Curtis was questioning the officer about the quality of his investigation and why he did not further explore Allen's physical injuries. On re-direct of Bocook, the Commonwealth simply clarified the end-point of the interview. The testimony related to a disputed matter, as opposed to intentional comment on silence to infer guilt. Further, Allen has not shown that the manner in which the issue was handled by the state courts violated clearly established Supreme Court precedent. Under the facts presented, *Doyle v. Ohio*, 426 U.S. 610 (1976), does not mandate a contrary result.[5] Thus, his sixth objection will be denied.

---

[5] Allen also objects to the Magistrate Judge's conclusion regarding application of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to the facts presented. Recently, this Court addressed application of *Martinez* to Kentucky-based federal habeas petitions and that discussion is relevant to Allen's objection. *See Foley v. White*, 2013 U.S. Dist. LEXIS 12588 (E.D.Ky., Jan. 30, 2013). In relevant part, this Court held:

> The rule announced in *Martinez* does alter the Supreme Court's previous holding in *Coleman* [*v. Thompson*, 501U.S. 722 (1991)]; however, the Supreme Court decisively limited the scope of *Martinez*, explaining that it is only a "limited . . . qualification" of the *Coleman* rule. *Martinez*, 132 S.Ct. at 1320 ("The rule of *Coleman* governs in all but the limited circumstances recognized here."). Additionally, the *Martinez* Court defined "initial-review collateral proceeding" as a collateral proceeding that provides a petitioner the first occasion to raise a claim of ineffective assistance of counsel. *Id.* at 1317. *Martinez* arose from Arizona, which "does not permit a convicted person alleging ineffective assistance of trial counsel to raise that claim on direct review." *Id.* at 1313. However, unlike Arizona, in Kentucky, claims of ineffective-assistance-of-counsel can be brought both in a collateral

  **F.**  **Seventh Objection – The Lead Detective's Purported Expert Testimony Regarding The Veracity Of The Petitioner's Testimony**

Allen also argues that Deputy Bocook was allowed to improperly offer expert testimony regarding whether Allen would have been injured if the shooting occurred as the petitioner claimed. On direct appeal, the Supreme Court of Kentucky described the claim as "questionably preserved at best." *Allen* 286 S.W.3d at 225. However, the matter was addressed by that court in the context of the manner in which it was admitted during trial. As explained by the Magistrate Judge, the challenged statement does not constitute expert testimony but a witnesses recitation concerning "a question already asked, not an opinion presently given." [Record No. 14, p. 32] The response by Deputy Bocook does not constitute an impermissible expert opinion. Thus, this objection will be overruled.

  **G.**  **Fourth Objection – Cumulative Error**

A party may not seek habeas relief based on a claim of cumulative error. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002). While the petitioner recognizes that the law in the Sixth Circuit does not support his position, he seeks to preserve this issue for further review. However, based on the well-established authority in this circuit, his objection on this point will be overruled.

---

proceeding pursuant to RCr 11.42 or on direct appeal. *See, e.g., Humphrey v. Commonwealth*, 962 S.W.2d 870, 872-73 (Ky. 1998); *Rodriquez v. Commonwealth*, 87 S.W.3d 8, 11-12 (Ky. 2002). Thus, . . . the "limited qualification" of *Martinez* does not apply to states such as Kentucky, because prisoners are not required to bring claims of ineffective-assistance-of-counsel only in collateral proceedings and may raise such claims on direct appeal.

*Id*. at *16-*17. *See also Moore v. Mitchell*, 2012 U.S. App. LEXIS 3915, *39-*42 (6th Cir., Feb. 26, 2013) (recognizing that Martinez's conclusion "was a narrow one" and joining other circuits "in refusing to expand it.")

**H.     Eighth Objection – Issuance Of A Certificate Of Appealability**

Finally, Allen objects to the Magistrate Judge's recommendation that this Court not issue a Certificate of Appealability on any issue raised in the petition. His assertion, however, is misplaced. A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the requisite "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), "a petitioner who has been denied relief in a district court 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (emphasis and brackets in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). In the present case, Allen has not made a substantial showing of a denial of a constitutional right. Likewise, he has not demonstrated that the issues he now seeks to raise are debatable among jurists of reason or that the questions are adequate to deserve encouragement to proceed further. *Slack v. McDaniels*, 529 U.S. 473 (9000); *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Accordingly, a Certificate of Appealability shall not issue with respect to any issue fairly raised in Allen's §2254 petition.

**III.**

Having conducted a *de novo* review of those portions of the record which are the subject of the petitioner's objections to the United States Magistrate Judge's Recommended Disposition, it is hereby

**ORDERED** as follows:

1. Petitioner Charles Allen's Motion for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Record No. 1] is **DENIED**.

2. The Recommended Disposition of United States Magistrate Judge Robert E. Wier [Record No. 14] is **ADOPTED IN FULL** and **INCORPORATED** herein by reference.

3. Petitioner Charles Allen's objections to the Recommended Disposition of the Magistrate Judge [Record No. 17] are **OVERRULED**.

4. A Certificate of Appealability will not issue on any issue raised in the Motion for a Writ of Habeas Corpus.

5. This civil action is hereby **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

This 15th day of March, 2013.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge